VÍCTOR MANUEL SOSA Y MILLÁN ET AL., Plaintiffs and Appellants, v. JUAN ISIDRO SOSA ESCOBAR ET AL., Defendants and Appellees.

No. 8973. Argued July 2, 1946.—Decided July 26, 1946.

574

*Ricardo H. Blondet* and *Arturo Ortiz Toro* for appellants. *Heriberto Torres Solá* por appellee Celestina Sosa Vizcarrondo. *Heriberto Torres Solá* and *Gabriel de la Haba* for appellee Antonio R. Matos. *Frank Martínez, M. A. García del Rosario,* and *Sebastián García Díaz* for appellees Federal Land Bank of Baltimore and The Land Bank Commissioner. *Sifre, Franceschi & Sifre* for appellee Loíza Sugar Company. *C. Coll y Cuchí* for appellee Marcial Suárez.

MR. JUSTICE CÓRDOVA delivered the opinion of the court.

The natural and adopted children of Manuel Sosa are back in our lap. Their case has been remanded here by the Circuit Court for the First Circuit to which the adopted children appealed from our judgment, which judgment, because the four justices then constituting this court were equally divided, affirmed that of the district court dismissing the complaint of the adopted children.[1] The appeal was relatively successful, thanks to the circumstance that this court is now composed of five members. The Circuit Court, by reason of the deference which in cases involving questions

---

[1] *Sosa v. Sosa,* 64 P.R.R. 732.

of local law it gives to our decisions, vacated our judgment.[2] And it remanded the case in the hope that it would now be decided by a majority of this court, including in its mandate that part of the judgment which refers to defendants Matos, Federal Land Bank, Land Bank Commissioner, Loíza Sugar Co., Marcial Suárez, and Ceferino Osorio, wherein the four justices of this court who intervened in the case, were agreed.

The facts of the case, and the pertinent statutes and precedents, are fully set forth in the opinions of Justices Todd and Snyder, 64 P.R.R. 732, 742.

We need only recall that Manuel Sosa was survived by two adopted and two acknowledged natural children and that in his will he designated his natural children as his sole and universal heirs, leaving to his adopted children legacies in the amount of $20,000 (somewhat less than one seventh of the estate), and the remainder interest in one-sixth of the estate. The adopted children contended that they were entitled to two-thirds of the estate and instituted this proceeding against the natural children, the other legatees, and the third persons who acquired rights in the estate from the natural children and legatees during the course of the eighteen years which passed between the partition of the estate and the filing of the complaint of the adopted children.

The district court dismissed the complaint on the ground that when there are forced heirs, such as natural children, the adopted child has not right whatsoever in the estate.

---

[2] *Sosa-Millán* v. *Sosa-Escobar*, 154 F. (2d) 886. The Circuit Court despite the rule it follows of not interfering with our judgments involving questions of local law unless they are "inescapably wrong" considered the possibility of deciding this case in accordance with its own independent opinion, since our was equally divided, but rejected it because "the job or harmonizing the various provisions of the Civil Code dealing with inheritance belongs primarily to the Supreme Court of Puerto Rico, not to the appellate federal courts." And it considered the possibility of affirming the judgment on the ground that it was not "inescapably wrong," but this was also rejected because it "would deny the present litigants an authoritative decision on the disputed question of law."

## I

The appellants maintain that, even if there are forced heirs, and in so far as their legal portion is not prejudiced, adopted children have the same rights in the estate as legitimate children, that is, they are entitled to two-thirds of the estate.

Section 177 of our Civil Code formerly provided, as did the Spanish Code, that the adopted child acquired no right to inherit from his adopted parent, in the absence of an agreement to the contrary in the deed of adoption. That provision was expressly repealed in 1902 and in its stead were substituted the Sections now numbered 132 and 133, which read as follows:

"Section 132—Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place.

"Section 133—The person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a letigimate child, with the exception noted in the preceding section."

The above-transcribed Sections, with slight variations, were copied from § 214 of the Louisiana Civil Code, which in its pertinent part provides:

" . . . such adoption shall not interfere with the rights of forced heirs.

"The person adopted shall have all the rights of a legitimate child in the estate of the person adopting him except as above stated."

The repeal of § 177 and its substitution by the provisions which give the adopted child the rights of a legitimate child in the family of the adopter, without prejudice to the rights of the forced heirs, constitute a clear expression of the legislative intent to abandon the principle expressed in the Spanish Code, so foreign to the historical concept of adoption, that the adopted child acquires no right to inherit (in the absence

of a contract), and to embrace the principle, so typical of adoption, that the adopted child acquires rights in the estate.

Neither this court, nor any of its justices, has even suggested that such was not the legislative intent in 1902. In the opinion delivered by Justice Todd in this case, 64 P.R.R. 737, it is acknowledged that the lawmaker in 1902 desired to grant, and granted, hereditary rights to the adopted child, although the conclusion is reached that these rights exist only in case of intestate succession, and then only in the absence of forced heirs.

But if, as we held in *Ex parte Ortiz* v. *Lluberas*, 42 P.R.R. 339, and in *Bardeguez* v. *Bardeguez*, 48 P.R.R. 692, and as all the present justices of this court are agreed, the lawmaker in 1902 granted the adopted child certain rights in the estate of the adopter, where are these rights granted, and where are they limited?

The hereditary rights of the adopted child are granted, and limited in §§ 132 and 133 of the Civil Code, quoted above. They are granted in § 133, which provides that the adopted child shall enjoy "in the family of the adopter the rights . . . of a legitimate child, with the exception noted in the preceding section." There is no other provision in Puerto Rico which grants to the adopted child any right in the testate or intestate inheritance of the adopter. If hereditary rights are granted in that Section it is because the lawmaker, in referring to the rights of a legitimate child in the family, meant to include rights in the estate, as was decided in *Ex Parte Ortiz* v. *Lluberas, supra.*

That the "rights in the family" which the adopted child acquires in the family of the adopter include rights in the testate or interestate inheritance is also corroborated by § 137 of our Code. That Section provides that "the adopted person shall preserve the *rights* belonging to him *in his own natural family*" and, as is clearly shown in the opinion of

Justice Todd in 64 P.R.R. 735, 736,[3] the rights which the adopted child thus preserves in his "natural family" include, among many others, the right to inherit whether or not there is a will.

If "rights in the family" is inclusive of the right to inherit in § 137, why is it not equally inclusive in § 133? If the right to inherit is not included in § 133, why is it included in § 137? If the right to inherit were not included in either of the two Sections, we would reach the anomalous result that the adopted child would have no hereditary rights either in his adoptive or in his natural family.[4] But we have

[3] " . . . Commenting on the final provisions of § 177 of the Spanish Civil Code, equivalent to our § 137, Scaevola states: 'And what shall these rights be? (1) To receive support if the adopter can not furnish it. We have already said that the right of support does not cease when the *patria potestas* is terminated; this is based on necessity and on blood relationship. (2) To use the surname of the natural family. (3) To receive gifts by acts *inter vivos* which shall be charged to the legal portion. (4) *To succeed by will.* (5) *To receive betterments.* (6) *To succeed intestate.* (7) *To claim the completion of his legitime if the testator left him less than the portion which necessarily belonged to him.* (8) To have the property of the deceased spouse reserved should the survivor marry a second time. (9) To increase the portion of the heir in the cases provided by the Code. (10) To receive inheritance by benefit of inventory or by the right to choose. (11) To exercise tutorship in cases where he is appointed by law, and to form part of the council with respect to the relatives of his natural family.' (Italics ours.) 3 Scaevola, Civil Code, 449, (3rd ed.)

"More concisely, but to the same effect in his *Estudios de Derecho Civil,* vol. 5, p. 1106 (2d ed.), Sánchez Román states: 'The person adopted retains all the rights belonging to him in his natural family; such as, support when the adopter is unable to furnish it, the use of the family's surname *as well as all the succession rights* in their different phases and, in general, all those allowed by the Civil Code attributable to the status of a member of the family except those relating to the *patria potestas,* while the adopter exercise the same.' (Italics ours.)

"We therefore see that the adopted child, pursuant to § 137, retains all his rights in the natural family . . . "

[4] There is nothing anomalous, on the other hand, in that the adopted child should retain his hereditary rights in his natural family and acquire in addition hereditary rights in his adoptive family. Adoption by its nature, and apart from its legal effects, grants to the adopted child, to a certain extent, a privileged status, in which he is considered as a son in the adoptive as well as in the natural family.

Turning to its legal effects, adoption confers upon the adopted child privileges which no other child is granted. For instance, under our code he enjoys the right of support in both families. It is true that in the adoptive family his right

already seen, and no one questions it, that under § 137 the "rights in the family" include rights in the testate and intestate inheritance. It is not unreasonable to conclude that that phrase has the same scope in § 133 and that this latter Section, therefore, grants the adopted child rights in the testate and intestate inheritance of the adopter.

 The premises having been established that the lawmaker in 1902 meant to grant to the adopted child certain rights in the inheritance of the adopter, and that those rights are conferred by § 133 and are limited, under said Section by the preceding one, it remains to determine the scope of such rights. Section 133 provides that they shall be the same as those of a legitimate child. Section 737 provides that legitimate children are entitled to two-thirds of the estate as their legal portion, of which the testator can not deprive them. It is true that neither § 737 of the Civil Code nor any of the Sections dealing with legal portions and forced heirs, mention the adopted child. Such mention is unnecessary, as is the mention of the legitimated child, who is not mentioned either. It is unnecessary because § 133 already states that the adopted child has the same rights as the legitimate child, just as § 121 sets forth that the legitimated child shall enjoy all the rights of the legitimate one. Hence, the adopted as well as the legitimated child have their legal

---

to support is subordinated to the preferential right of the children and parents of the adopter (§ 136 of the Civil Code). But the right of the adopted child to inherit his adopter in Puerto Rico is subordinated to the preferential right of forced heirs to their legal portion. Moreover, that the adopted child should preserve his hereditary rights in his natural family, and at the same time enjoy the privilege of acquiring rights in the estate of the adopter, is a well established principle in the history of adoption. That privilege existed in 1902 in Lousiana, and prevailed until 1938, and is perhaps still in force. (See 13 Tulane Review 293). And in the Philippines (*Borres and Barza* vs. *Municipality of Panay*, 42 Phil. Rep. 643, 658) the adopted child has all the rights of a legitimate child in the estate of the adopter as well as in that of his natural parents. Also in the Roman law, the Partidas, the Novísima Recopilación and the French, Italian, Swiss and Guatemalan Codes, for instance, the adopted child preserves his hereditary rights in his natural family while he acquires rights, more or less ample, in the estate of the adopter. (3 Scaevola 434 *et seq.*, 2 Manresa 86, 13 Tulane Law Review 293).

portion fixed in the Code: the legal portion which belongs to the legitimate child, and which amounts to two-thirds of the estate. But §§ 133 and 132 provide that the right of the adopted child to two-thirds of the inheritance is not absolute. It is subject to one limitation: that it shall not prejudice the rights of forced heirs which shall remain as though the adoption had not taken place. It may be said, therefore, that the adopted child is entitled to a legal portion of two-thirds, which may be reduced, and in certain cases eliminated, when the preferential legal portion of one or more forced heirs takes up part or the whole of the portion which would otherwise correspond to the adopted child.

In the case at bar the concurrence of forced heirs does not reduce the legal portion of two-thirds which pertains to the adopted children. Natural children concur. The legal portion of natural children depends on whether or not there are descendants or ascendants. If there are legitimate descendants the natural child is entitled to a portion equal to one-half of that pertaining to a legitimate child provided it can be included in the third of free disposition.[5] If only ascendants concur the natural children are entitled to one-fourth of the estate without prejudice to the portion of the surviving spouse.[6] If neither legal ascendants nor descendants concur, one third of the estate pertains to the natural children as their legal portion.[7] This case is covered by § 769 which fixes at one-third the legal portion of natural children, in the absence of legitimate descendants or ascendants, not because, as was said in the opinion of Justice Snyder in 64 P.R.R. 750, the adopted child is not considered as a legitimate descendant (§ 133 expressly provides that he should be considered as a legitimate child) but because § 132 provides that the rights of forced heirs "shall remain as though the adoption had not taken place." Therefore, in determining the legal portion of forced heirs when there are adopted children it must be as-

[5] Section 767 of the Civil Code (1930 ed).
[6] Section 768 of the Civil Code (1930 ed).
[7] Section 769 of the Civil Code (1930 ed).

sumed that there has been no adoption. On that assumption, in the case at bar there would be no legitimate descendants, and § 769 is strictly applicable.

As the legal portion of the natural children in the case at bar is one-third of the estate, their rights are not prejudiced, and remain as though the adoption had not taken place, in acknowledging to the adopted children their legal portion of two-thirds.

It must be admitted that the result we have just reached is incongruous with the holding in the case of *Ex parte Lugo,* 64 P.R.R. 826. In that case, which was decided a few days after our original decision in the case at bar, the four justices who then constituted this court agreed, although on different grounds, that the adopted child who concurs with forced heirs in an intestate succession inherits nothing, as the forced heirs are entitled to inherit the entire estate, and inasmuch as § 132 provides that the adoption shall not prejudice the rights belonging to forced heirs.

If, as has just been held in the case at bar, the adopted child has a right, when concurring with natural children in the testate succession, to two-thirds of the estate regardless of the will of the testator, it is anomalous that if no will exists to deny him that right, the adopted child acquires nothing. It might then be said that the right of the adopted child, in concurrence with a forced heir, exists only when the adopter tries to deprive him of it. In other words, if the adopter says nothing, if he leaves no will, the adopted child acquires nothing and everything goes to the forced heir. But if the adopter expresses in a will his desire to leave his entire estate to that same forced heir, such expression (which would be superfluous, inasmuch as in the absence of a will the forced heir would inherit everyhing) would cause the adopted child to be entitled to two-thirds of the estate and the forced heir to be limited to his legal portion. That is, however, the result to which the *Lugo* case carries us, when comparing it with the present case.

Even if the result reached in this case is incongruous with that obtained in the *Lugo* case, the incongruity might be justified if our legislation required it. But it does not demand it. One need only construe our statute literally, as it was construed in the State whence it came to us, Louisiana, in *Alexander* v. *Gray*, 181 So. 639, to see that it was not correctly applied in the *Lugo* case. That case is based on the premise that in the intestate succession "the rights belonging to forced heirs" to which § 132 refers, which rights the adoption can not prejudice, comprise the entire estate. This is not so. The "rights belonging to forced heirs" are defined with all clarity in § 5, chapter 2, Title 3, of Book 3 of the Civil Code (§ 735 to 750). A forced heir is entitled to a legal portion only, and to the incidents flowing from it. "A legal portion" states § 735, "is that part of the estate of which the testator can not dispose, because the law has reserved it for specified heirs called on that account forced heirs." Since the phrase "the rights belonging to forced heirs" used in our § 132 is equivalent to "rights of specified heirs to the legal portion and its incidents," the literal meaning of § 132 is the following:

"The adoption shall in no case injure the rights of specified heirs to their legal portion and its incidents, which shall remain as though the adoption had not taken place."

Section 214 of the Louisiana Code, which in its pertinent part in no way differs from ours,[8] was thus construed in

---

[8] The Lousiana Code provides that the adoption "shall not interfere with the rights of forced heirs." And our code provides that it "shall *in no case* injure the rights belonging to forced heirs, *which shall remain as though the adoption had not taken place.*" The words added by our legislature do not enlarge the concept of the "rights belonging to forced heirs." They simply stress the fact that the right of which the Louisiana statute speaks shall subsist in every case, and *shall remain as though the adoption had not taken place.* But the stress placed in Puerto Rico on the preservation of the rights of forced heirs in no way changes the effect of the provisions of the Louisiana statute. It is evident that in Louisiana, also, those rights are guaranteed in every case, inasmuch as no

*Alexander* v. *Gray, supra,* where, as in the *Lugo* case, an intestate inheritance was involved, forced heirs concurring with the adopted child, and it was held that the right of the forced heirs which that Section guaranteed was the right to a *legitime* (legal portion) and that in so far as that *legitime* was not prejudiced, the adopted child had the rights of a legitimate child in the intestate inheritance.

Let it not be said in an intestate inheritance it is out of place to speak of legal portions, or forced heirs. It is perfectly pertinent, to speak of legal portions in every case in which the rights of forced heirs may be prejudiced, although there is no will. For instance, if a person who dies intestate has made a donation his forced heirs may challenge it in so far as it affects their legal portion. This is so, provided in §§ 578, 743, and 747 of the Civil Code. Section 578 provides that: ". . . no person can give nor receive, by way of gift, more than what he can give or receive by will. A gift shall be considered void in all that exceeds said limits." That same concept could have been expressed by the lawmaker thus: "A gift shall in no case prejudice the rights belonging to forced heirs." And this was the language which the lawmaker used in limiting the rights of the adopted child. Thus the lawmaker has guaranteed the legal portion of forced heirs against the prejudice which otherwise might be caused to such heirs, not only by will, but by gift or by adoption. And in the case of adoption, as well as in those of a will or a gift, that guarantee is limited to the portion of the estate which the Code guarantees, the only thing it guarantees: the legal portion.

---

exceptions are made. And it is obvious also, that in Louisiana those rights (whatever they may be) remain as though the adoption had not taken place. If the existence of the adoption were permitted to impair those rights in Louisiana, then the adoption would "interfere" with those rights, and that is expressly prohibited by the Louisiana statute. In other words, if the adoption does not interfere with the rights of forced heirs, then the conclusion that those rights remain as though there was no adoption is unavoidable and its expression superfluous. There is no difference, therefore, in this respect between the Louisiana statute and ours.

584

The *Lugo* case was, therefore, erroneously decided.[9] The adopted child has in the testate or intestate inheritance of the adopter all the rights of a legitimate child in so far as those rights do not prejudice the legal portion of the other forced heirs.

II

The right of the plaintiffs to two-thirds of the estate having been established, it remains to determine what remedy or remedies may be granted to them.

█ █ The defendants pray, in the first instance, that the institution of heirs made in the will of Manuel Sosa be annulled. This remedy does not lie because, as is set forth in the opinion of Justice Snyder in 64 P.R.R. 752, 753, there was no preterition of the adopted children since something was left to them in the will.

In the opinion of Justice Snyder, 64 P.R.R. 753, 754, and following the reasoning in *Bardeguez* v. *Bardeguez, supra,* an additional ground was offered to deny to the plaintiffs their claim to annul the institution of heirs, to wit, that the only persons who are entitled to annul the institution of heirs on the ground of preterition are forced heirs in the direct line (§ 742 of the Civil Code) and that adopted children do not have that right as they are not descendants ''in the direct line.''[10] That additional ground was unnecessary since, as we have already decided, there has been no preterition of the adopted children and for that reason alone there is no basis

---

[9] It may perhaps be objected that everything which is said here of the *Lugo* case is *obiter dictum*. But the truth is that the holding in the *Lugo* case is one of the main arguments with which we have been faced in reconsidering the case at bar, and we have not deemed it proper to avoid it.

[10] As appellants indicate, what is said on this point in the *Bardeguez* case is nothing more than a *dictum*, since the result in that case would have been exactly the same if the institution of heirs had been annulled. Whether or not the institution of heirs was void, the omitted heir would have been entitled to only one-third of the estate, and the other heirs to another third, as their legal portion. The third of free disposition would in any case have gone to the heir favored by the testator, since the nullity of the institution of heirs does not affect the validity of the will in itself. See § 293 of the Civil Code.

to annul the institution of heirs. We consider that additional ground, as well as the *dictum* in the case of Bardeguez on which it was based, erroneous. As we have already seen, the adopted child has all the hereditary rights of a legitimate child, without prejudice to the preferential right of other forced heirs to their legal portion. Among the rights of a legitimate child is that of annulling the institution of heirs if he is omitted (§ 742 of the Civil Code), since the legitimate child is one of the forced heirs in the direct line. Inasmuch as the adopted child acquires the rights of a legitimate child in the estate of the adopter, he acquires, among others, the right conferred upon the legitimate child by § 742. See Muñoz Morales, Annotations to the Civil Code of Puerto Rico, 10 *Revista Jurídica de la Universidad de Puerto Rico* 434; *Estate of Winchester,* 140 Cal. 468; *Warren* v. *Prescott,* 84 Mo. 483, 30 Am. St. Rep. 370.

## III

Nor may the partition of the estate of Manuel Sosa be annulled, for the reasons stated in the opinion of Justice Snyder, 64 P.R.R. 755–58, particularly in view of the provisions of § 1033 of the Civil Code. But even if the partition were void the third persons who acted relying on the will and on the entries in the registry of property can not be prejudiced by its nullity, since neither the will nor the registry of property in any way indicates the concurrence of adopted children in the estate. The appellants insist, however, that the civil registry showed the fact of the adoptions, and suggest that if the third persons had been diligent and had examined the civil registry they would have been informed of that fact. This is not so. No matter how diligent the third persons had been they would not have learned of the adoptions from the entries in the civil registry, since the fact does not appear on the margin of the record of the adopter,

but only on the margin of the record of the adopted children,[11] and one who has no reason to suspect the existence of an adoption has no basis to investigate the record of the adopted child.

█ The appellants argue that, if they can not proceed against that portion of the estate which is in the hands of third persons, they would be deprived of their property without due process of law. But the property right which they invoke, that is, their legal portion, is granted to them by the Civil Code and in allowing that right, the Code limits it in providing (1) that the institution of heirs shall not be annulled unless there is preterition of a forced heir (2) that the partition will not be set aside, although one of the heirs did not intervene, in the absence of fraud or deceit. The contention of the appellants amounts to this: that that part of the Code which limits the rights which another part confers upon them is unconstitutional. But neither our Organic Act nor the Constitution of the United States guarantees the right of anyone to inherit. The rights of the appellants, which are purely statutory, may be limited or totally eliminated by other statutory provisions.

IV

Although, as we have already seen, the appellants are not entitled to the nullity of the institution of heirship or of the partition, yet they have the right to recover from the coheirs and defendant legatees that part of the estate which the latter have received with prejudice to the legal portion of the appellants, as is explained in detail in the opinion of Justice Snyder, 64 P.R.R. 761–62. As indicated there, the present state of the record does not permit entry of a final judgment by this court. The proper disposition of the case,

---

[11] From the evidence of the plaintiffs themselves it appears that the order of the court approving the adoption directed that a marginal note be entered in the record of the birth of the adopted child and that this was done. No entry appears to have been made on the margin of the record of the adopter.

therefore, is to (*a*) affirm the judgment as to the defendants Antonio Matos, Federal Land Bank of Baltimore, The Land Bank Commissioner, Loíza Sugar Co., Marcial Suárez and Ceferino Osorio; (*b*) reverse the judgment as to the remaining defendants; and (*c*) remand the case to the district court for further proceedings not inconsistent with this opinion.

DISSENTING OPINION OF MR. JUSTICE TODD, JR.

November 5, 1946.

The case of adopted children has come back from its pilgrimage to Boston. There a precedent [1] was established and here judicial legislation was enacted of extraordinary character and scope.

The reasons for my dissent in this case have been set forth in my opinion in *Sosa* v. *Sosa,* 64 P.R.R. 732, and in *Ex parte Lugo,* 64 P.R.R. 826, and I see no need of repeating or adding anything to what has already been said therein. But I do wish to express my full disagreement to the manner in which the case of *Ex parte Lugo; Ortíz, supra,* has been reversed. The majority admits that everything contained in its opinion in connection with said case is *"obiter dictum"*. Nevertheless, it further states that the case of *Lugo* was "erroneously decided." [2] As for myself I ratify my opinion in said case and believe that said opinion as well as that of Mr. Justice De Jesús, on other grounds, successfully refute the arguments presented by the majority in the present case.

I dissent from the opinion of the majority also, because although the courts, in construing statutes, may, as stated by Judge Holmes, legislate "interstitially", in my opinion they should refrain from so doing whenever the statute is so defective as to require for its construction and application judicial legislation every time a case comes up on said question.

[1] The Circuit Court remanded the case granting a new hearing notwithstanding the fact that part of the judgment appealed from was unanimous and that said concession might affect vested rights.

[2] In my opinion this conclusion based on an *obiter,* constitutes, with due respect, a greater *obiter.*

And such is the case with the adopted children in Puerto Rico in view of the decision that they are, in effect, legitimate children or at least are regarded as their equals. In so far as their hereditary portion is concerned, if the adopted child is like a legitimate child, said portion should be uniform at all instances. But such is not the case according to the opinion of the majority. It depends on whether the forced heirs are prejudiced and in order not to prejudice them the courts, and not the law, then come into play to determine in each case the amount of said portion. We have reached the maximum as to legislating judicially.

Due to the changes that take place in this court—recently quite often [3]—and the possibility of different opinions in the future as to the disputed and uncertain hereditary rights of adopted children, in the testate as well as in the intestate succession, it is my opinion that the Legislature of Puerto Rico should amend all those Sections of our code relating to adopted children in order to clearly define those rights. Otherwise, the uncertainty shall prevail and the courts shall continue legislating.

--------

[1] After the opinion of the majority was delivered a vacancy took place. Another one may occur. Upon filling those two vacancies if the judges appointed should agree with my opinion in another case on hereditary rights of adopted children, the doctrine laid down by the majority would be reversed.